UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

PAUL J. GENGO,

               *Plaintiff*,

    -against-

CITY UNIVERSITY OF NEW YORK,

               *Defendant*.

--------------------------------------X

**NOT FOR PUBLICATION**

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

07-CV-681 (KAM)(JMA)

**MATSUMOTO, United States District Judge:**

       Plaintiff Paul J. Gengo ("plaintiff"), who from 2001 to
2006 was employed on the City University of New York ("CUNY")
Queensborough Community College ("QCC") faculty, commenced this
action against defendant CUNY alleging discrimination under
federal and state law and other violations of state law. (See
ECF No. 1, Compl.) Specifically, plaintiff alleges that by
denying him four promotions and ultimately denying him
reappointment to the CUNY faculty with tenure, CUNY discriminated
and retaliated against him on the basis of his Italian-American
national origin in violation of Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000e, <u>et seq.</u>, ("Title VII"); discriminated
against him on the basis of his age in violation of the Age
Discrimination in Employment Act of 1967, 29 U.S.C. § 621, <u>et
seq.</u>, ("ADEA"); and discriminated against him on the basis of
both his age and national origin in violation of the New York
State Human Rights Law, N.Y. Executive Law § 290, <u>et seq.</u>,

("NYSHRL") and the New York City Human Rights Law, N.Y.C.
Administrative Code § 8-107 ("NYCHRL"). (See id.) Further,
plaintiff alleges that CUNY's actions violated the Employee
Retirement Income Security Act of 1974 ("ERISA"). (See id.)
Defendant moved for summary judgment and this court referred
defendant's motion to Magistrate Judge Joan M. Azrack for a
report and recommendation pursuant to this court's authority
under 28 U.S.C. § 636(b). (See ECF Nos. 50, Not. Of Mot. for
Summary J. by CUNY ("Def. Mot.") and supporting documentation;
see also ECF No. 56, Pl. Opp. to Mot. for Summary J. ("Pl.
Opp."), and supporting documentation; Order Referring Mot. dated
10/13/2010.)

        Judge Azrack has issued a Report and Recommendation
("Report & Recommendation" or "R&R") recommending that the court
grant defendant's motion for summary judgment in its entirety.
(ECF No. 64, R&R dated 12/2/2010.) Now before the court is
plaintiff's timely objection to the R&R, and defendant's
response. (See ECF Nos. 66 and 67, Pl. Obj. to the R&R dated
1/4/2011 ("Pl. Obj. Mem."), and 69, Def. Opp. to Pl. Obj. to the
R&R dated 2/4/2011 ("Def. Obj. Mem.").) For the reasons set
forth below, the court adopts the R&R in its entirety and grants
defendant's motion for summary judgment.

## STANDARD OF REVIEW

To the extent that a party makes specific and timely objections to a magistrate's findings, the court must apply a *de novo* standard of review. United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); 28 U.S.C. § 636(b)(1). Upon such *de novo* review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, where no objection to a Report and Recommendation has been filed, the district court "need only satisfy itself that that there is no clear error on the face of the record." Urena v. New York, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

## BACKGROUND

Familiarity with the underlying facts as set forth in the R&R is presumed and those undisputed facts are repeated here only to the extent necessary to inform the court's analysis.[1] The CUNY system consists of eleven senior colleges and six community colleges which are overseen by CUNY's central administration. (R&R at 4.) Plaintiff, an Italian-American in his sixties during the relevant time period, served variously as

---

[1] With one exception noted *infra*, the parties do not dispute the R&R's recitation of the relevant facts. (See generally Pl. Obj. Mem.; Def. Obj. Mem.) Accordingly, the court's summary of the facts relies upon the R&R with

3

a Substitute Assistant Professor and Adjunct Assistant Professor at CUNY's QCC from February 1990 until he was not reappointed for the spring 1993 semester. (Id. at 2-3.)

Following QCC's decision not to reappoint him for the spring 1993 semester, plaintiff filed a grievance alleging discrimination on the basis of his national origin. (Id. at 3.) An arbitrator found in favor of plaintiff, and the arbitration award granted plaintiff a monetary award, reappointment at QCC to the position of Assistant Professor, and the option of having a Select Faculty Committee ("SFC"), rather than QCC, assess any future requests by plaintiff for reappointment and promotion. (Id.) According to specific procedures set forth in a collective bargaining agreement between CUNY and the faculty union, SFCs are panels of three tenured professors which are convened by the CUNY central administration from across the entire CUNY system and tasked with considering promotion and reappointment requests under specified criteria. (Id. at 4-5.)

Plaintiff, pursuant to the arbitration award, rejoined the QCC faculty as an Assistant Professor for the fall 2001 semester. (Id. at 3.) At that time, plaintiff exercised the option from his arbitration award to have SFCs consider and decide future personnel decisions pertaining to his reappointment and promotion. (Id.) SFCs thus reviewed plaintiff's subsequent

the exceptions noted.

requests for promotion and reappointment with tenure during the period from fall 2001 until the spring 2006. (Id. at 3-4.) During that time, although SFCs gave plaintiff three positive recommendations and one recommendation with "serious reservations" for reappointment, SFCs empaneled by the CUNY central administration also denied plaintiff promotions on four separate occasions.[2] (See id. at 4; Blank Aff. ¶ 25, Ex. I.) Another SFC convened by the CUNY central administration ultimately denied plaintiff reappointment with tenure for the 2006-2007 academic year. (Id.) Plaintiff thereafter commenced the instant action alleging age and national origin discrimination under federal and state laws, as well as violations of ERISA. (See generally Compl.)

## DISCUSSION

In light of plaintiff's timely objections to the R&R, the court has undertaken a *de novo* review of the full record including the applicable law, the pleadings, the parties'

---

[2]    Plaintiff objects that the R&R's statement of facts omitted that by letter dated October 18, 2006, plaintiff filed an application for promotion effective September 1, 2005 (the "fourth promotion request"). (Pl. Obj. Mem. at 1-2 (citing R&R at 4); see also Def. Obj. Mem. at 19-20.) Plaintiff acknowledges that the record is unclear as to whether the R&R implicitly addressed the fourth promotion request but merely omitted it from the statement of facts, or whether the R&R accidentally or intentionally declined to consider the fourth promotion request. (See Pl. Obj. Mem. at 1-2.) Given that the R&R explicitly notes plaintiff's four separate promotion requests and cites to record sections referring to the fourth promotion request, it appears that the R&R did in fact consider this fourth promotion request. (See R&R at 4 (citing Compl. ¶¶ 14-15, 22, Decl. of Laura Blank in Supp. of Mot. for S.J. ("Blank Decl."), ¶¶ 47-56).) This objection is further addressed infra.

submissions in connection with the instant motion for summary judgment, the R&R, and the plaintiff's objections and defendant's responses to the R&R.  See 28 U.S.C. § 636(b)(1).

Plaintiff poses four overarching objections to the R&R. First, plaintiff objects to the R&R's finding that the Eleventh Amendment bars plaintiff's NYSHRL, NYCHRL, ADEA, and ERISA claims against CUNY.  (Pl. Obj. Mem. at 2-8.)  Second, having argued that the Eleventh Amendment does not deprive the court of jurisdiction over his NYSHRL, NYCHRL, and ADEA claims, plaintiff further objects to the R&R's alternative recommendation that even assuming that the Eleventh Amendment does not bar these claims, the claims should be dismissed on the merits.[3]  (Id. at 8, 16-17, 19-20.)  Third, plaintiff objects to the recommendation that his surviving Title VII discrimination claim should be dismissed for failure to make a *prima facie* showing of discrimination on the basis of national origin.  (Id. at 1-2, 8-16.)  Fourth, plaintiff objects to the R&R's recommendation that plaintiff's Title VII retaliation claim should be dismissed for failure to make out a *prima facie* claim of retaliation.  (Id. at 16-19.)  These

---

[3]     Notably, plaintiff does not object to the R&R's finding that his ERISA claim is meritless.  (See R&R at 12.)  Absent any objections to a portion of a report and recommendation, the court "need only satisfy itself that that there is no clear error on the face of the record."  Urena, 160 F. Supp. 2d at 609-10 (quoting Nelson, 618 F. Supp. at 1189).  The court is satisfied that there is no clear error here with respect to the R&R's recommendation that the court grant summary judgment to defendant on plaintiff's ERISA claim.  Accordingly, and for the reasons stated in the R&R, the court adopts the recommendations that the ERISA claim is barred by the Eleventh Amendment and, alternatively, meritless.  Plaintiff's ERISA claim is therefore dismissed.  (See R&R at 8-12.)

objections are each discussed in turn.

### A. Objections to the Finding that the Eleventh Amendment Bars Plaintiff's Claims Under the NYSHRL, NYCHRL, ADEA, and ERISA and the Alternative Finding that Those Claims Must be Dismissed on the Merits

Plaintiff first objects to the R&R's finding that plaintiff's NYSHRL, NYCHRL, ADEA, and ERISA claims are barred by the Eleventh Amendment.[4] "The Eleventh Amendment generally bars suits against a state in federal court." Pikulin v. City University of New York, 176 F.3d 598, 600 (2d Cir. 1999) (citation omitted). Further, such protection extends "not only to a state, but also to entities considered 'arms of the state.'" Clissuras v. City University of New York, 359 F.3d 79, 81 (2d Cir. 2004) (per curiam) cert. denied, 543 U.S. 987 (2004) (quoting McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001)).

The Second Circuit has set forth two guideposts for determining whether a given entity qualifies as an "arm of the state" for purposes of the Eleventh Amendment. See Pikulin, 176 F.3d at 600 (quotation omitted); see also Clissuras, 359 F.3d at

---

[4] The disputed issue here is solely whether the relevant defendant in this case is the state or an entity considered an 'arm of the state' for Eleventh Amendment purposes, as the parties agree that sovereign immunity protects such entities from suit in private actions under the NYSHRL, NYCHRL, ADEA, and ERISA. See, e.g., Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 447-49 (2d Cir. 1999) (concluding that plaintiff's New York Human Rights Law claim was barred by the Eleventh Amendment); Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (claims under the NYCHRL barred by state sovereign immunity); Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91 (2000) (Eleventh Amendment bars all claims asserted under the ADEA); Hattem v. Schwarzenegger, No. 04 Civ. 1944 (GEL), 2004 U.S. Dist. LEXIS 9710, at *3-4 (S.D.N.Y. May 27, 2004) (Eleventh Amendment bars claims under ERISA against state); cf. Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976) (Eleventh Amendment immunity abrogated for suit to recover damages from states under

82 ("<u>Pikulin</u> set forth two factors that should guide the
determination of whether an institution is an arm of the state .
. . .").  In making this determination, courts should consider
first, the "extent to which the state would be responsible for
satisfying any judgment that might be entered against the
defendant entity," and second, "the degree of supervision
exercised by the state over the defendant entity."  <u>Pikulin</u>, 176
F.3d at 600.  Crucially, the first of these factors is the "most
salient factor" in the Eleventh Amendment determination.  <u>See</u>
<u>Clissuras</u>, 359 F.3d at 82 (<u>quoting</u> <u>Hess v. Port Auth. Trans.-</u>
<u>Hudson Corp.</u>, 513 U.S. 30, 48 (1994)).

Relevant to this case, the Second Circuit has expressly
found under the two <u>Pikulin</u> factors that CUNY's senior colleges
and central administration qualify as 'arms of the state' for
purposes of the Eleventh Amendment.  <u>See</u> <u>Clissuras</u>, 359 F.3d at
83 ("Plaintiffs' suits against CUNY are equivalent to suits
against the State of New York and are therefore barred by the
Eleventh Amendment.")  This holding rests in part upon the fact
that under state law, the State, and not the City, is responsible
for any judgments against the CUNY senior colleges and central
administration.  <u>See</u> <u>id.</u> at 81 n.2.  There is an open question in
this Circuit, however, as to whether "CUNY *community* colleges"
also qualify as 'arms of the state' under the Eleventh Amendment.

_____

Title VII).

See id. at 82 n.6 (emphasis in original).  While no Second
Circuit precedent directly addresses this question, the Court has
noted in *dicta* that community colleges may not qualify for
sovereign immunity because under state law it appears that the
City may be responsible for paying any judgments rendered against
the CUNY community colleges.  See id. (suggesting in *dicta* that
CUNY community colleges may not qualify as 'arms of the state'
under the Pikulin factors).

Against this legal background, the R&R noted that the
first crucial inquiry for the Eleventh Amendment analysis in this
case, unlike many others, is not whether CUNY or QCC is an 'arm
of the state' under the Eleventh Amendment, but rather which
entity – CUNY or QCC – is the relevant defendant under the facts
of this particular case where plaintiff elected to have SFCs, and
not QCC, control the personnel decisions he now challenges.  (See
R&R at 9-10.)  In other words, the R&R queried which entity – the
central administration or the community college – should be
liable for employment decisions made by an SFC composed of
faculty members who are jointly chosen by CUNY and the faculty
union Professional Staff Congress (PSC) as eligible to serve on
an SFC.  (Blank Aff. ¶¶ 10-11.)  In turn, the members of an SFC
for a promotion or reappointment decision are chosen by the
central administration but pertaining to a QCC faculty member.
(See id. ¶ 12; R&R at 9-10.)  According to the R&R, this analysis

could be dispositive on the immunity issue, because if CUNY's central administration is the relevant defendant entity (and here the only defendant named by plaintiff), the Eleventh Amendment would indisputably bar certain of plaintiff's claims, while if QCC, a CUNY community college (not named by plaintiff), is the relevant defendant entity, the court would need to undertake an assessment of whether or not CUNY community colleges constitute an 'arm of the state' under the Eleventh Amendment thereby barring some claims.  (See id.)

          Given that here, at plaintiff's option, each of the disputed personnel decisions was considered, not by QCC, but by the SFCs comprised of faculty members from throughout the CUNY system and empaneled by the central administration, the R&R concluded that the central administration "is the entity that should be responsible for any judgments relating to those decisions."  (Id. at 12.)  The R&R found further support for this conclusion in the fact that as a matter of New York law, the State of New York would satisfy any judgment arising out of the decisions by the SFCs which gave rise to plaintiff's claims.  (See id. at 10-11 (discussing declaration of Harvey Silverstein, supervising attorney in the Office of the New York State Comptroller, who concluded "that payment of a judgment in this action for money damages would be the responsibility of New York State.") (citing Silverstein Decl. ¶¶ 2, 8).)

10

Plaintiff makes two objections to the R&R's finding that the central administration is the relevant defendant entity. First, plaintiff contends that "contrary to the Magistrate's determination[,] it was the SFC committee and not the central office that made the final determination" in connection with the disputed personnel decisions here. (See Pl. Obj. Mem. at 2-8.) Plaintiff's objection confuses the R&R's legal conclusion for factual analysis.

Thus, as a factual matter, plaintiff is correct that the SFCs rendered the decisions on plaintiff's requests for promotion and reappointment with tenure. Indeed, the R&R noted that plaintiff elected to have his applications "considered . . . by SFCs" and that acknowledged that the adverse actions at issue here were "taken by a[n] [SFC] committee that was specifically convened to remove QCC from the decision making process." (R&R at 10.) Indeed, when an SFC is used, the employee's college, here QCC, is excluded from the decision making process. (Blank Aff. ¶ 18.) Moreover, just as plaintiff has conceded, the R&R found that QCC was excluded from that decision-making process. (See R&R at 10 (noting that plaintiff "effectively took the [personnel] decision out of QCC's hands"); see also Pl. Obj. Mem. at 7 (noting that QCC was "not part of the decision making" for the challenged personnel decisions).)

After finding as a factual matter that the "adverse

actions" plaintiff complains of were "taken by" the SFCs, the R&R
went on to conclude that as a legal matter, the central
administration should be the entity held responsible for those
SFC actions. (See R&R at 10.) Plaintiff confuses this legal
conclusion for factual analysis when he complains that the R&R
incorrectly concluded that "the central administration made the
[disputed personnel] decision[s]" here. (See Pl. Obj. Mem. at
3.) Plaintiff is correct that the R&R states literally that
"CUNY's central administration made the challenged decisions."
(R&R at 12.) Yet in the context of the entire record reviewed *de
novo* by this court, and the R&R's entire discussion of sovereign
immunity, including those portions of the R&R which explicitly
acknowledge the SFC's role in the decision making process, that
literal statement can only be understood as representing the
R&R's legal conclusion that because the central administration
had control over, and under state law would be financially liable
for, the disputed personnel decision "made" through the SFCs, the
central administration should be liable for those decisions.
(See R&R at 10-12.)

        The R&R therefore found, as a factual matter, that the
SFCs, and not QCC, made the challenged decisions here, precisely
as plaintiff urges. Moreover, to the extent the R&R can be read
as finding that the central administration, and not the SFC made
the challenged decisions, a rejection of this finding and

acceptance of plaintiff's objection would not alter the R&R's ultimate, and correct, conclusion: that as a legal matter, the central administration "should be the entity held to account for any . . . wrongdoing" by the SFCs because it is the central administration that controlled, and is financially liable under New York law for, the actions of the SFCs. (See R&R at 10.) Indeed, this court agrees with the R&R that the authorities cited by plaintiff fail to support plaintiff's alternative argument that the "location of the employee and not the decision maker" is the determinative factor in identifying the relevant defendant entity for Eleventh Amendment purposes. (See Pl. Obj. Mem. at 7-8; see also R&R at 11 (considering and rejecting the same argument made in plaintiff's opposition to the summary judgment motion).) Accordingly, plaintiff's first objection is denied.

Plaintiff's remaining objection challenges the R&R's ultimate conclusion that the central administration should be accountable for the SFCs' actions on the basis of "the equities." (See Pl. Obj. Mem. at 5.) Essentially, plaintiff rejects the conclusion that the central administration is accountable for actions by the SFCs on grounds that the result – that defendant is entitled to sovereign immunity – is "unfair." (See id. at 7.) Plaintiff asserts that "it would be absurd that a system that was created [in connection with the arbitration award] to help a person who was subject to discrimination would result in

13

diminution of rights" by barring claims under the sovereign

immunity doctrine if that person later became "subject to further

discrimination." (Pl. Obj. Mem. at 7.) Plaintiff raised the

same argument in his opposition to the instant motion for summary

judgment. (See R&R at 11.) Judge Azrack carefully considered

this argument but concluded, and this court agrees, that "the

greater absurdity would be holding QCC responsible for a decision

that was affirmatively taken out of" its hands. (See id.)

Moreover, this court rejects outright plaintiff's assertion that

the result of plaintiff's own choice to have SFCs evaluate his

personnel requests is somehow "unfair" to plaintiff. Plaintiff's

second objection is therefore denied.

Having concluded that each of plaintiff's objections

lacks merit upon a *de novo* review of the underlying record and

the law, for the reasons articulated above and in the R&R, this

court adopts the R&R's conclusion that the central administration

of CUNY is the relevant defendant entity here, as well as the

corresponding conclusion that the Eleventh Amendment bars

plaintiff's claims under the NYSHRL, NYCHRL, ADEA, and ERISA.

(See R&R at 9-12.)

Further, having concluded that CUNY is entitled to

sovereign immunity with respect to these claims, the court need

not address plaintiff's objections to the R&R's recommendation

that the court reject those claims on the merits, however, were

this court to address plaintiff's NYSHRL, ADEA, and ERISA claims, this court would, and does, adopt the alternative findings as recommended by the R&R for substantially the reasons stated in the R&R. (See R&R at 12 n.7; 20 n.10; 24-27; see also Pl. Obj. Mem. at 8, 16-17, 19-20.)

Moreover, even if the Eleventh Amendment did not bar plaintiff's NYCHRL claims, mindful that such claims are subject to an evolving, more liberal standard of review, and in light of the dismissal of plaintiff's NYSHRL, ADEA, and ERISA claims discussed above and the Title VII claims discussed *infra,* the court would, and does, decline to exercise supplemental jurisdiction over plaintiff's NYCHRL claims. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278-79 (2d Cir. 2009) (NYCHRL claims must be separately evaluated from Title VII and NYSHRL using an independent, liberal analysis targeted at fulfilling the NYCHRL's "uniquely broad" and remedial purposes) (quoting Williams v. N.Y. City Hous. Auth., 872 N.Y.S.2d 27, 31 (N.Y. App. Div. 2009)); see also Kolenovic v. ABM Indus. Inc., 361 F. App'x 246, 248 (2d Cir. Jan. 21, 2010) (noting that court may properly dismiss a NYCHRL claim without prejudice to refiling in state courts upon conclusion that "this area of law would benefit from further development in the state courts").

**B. Objections to the Finding that Plaintiff's Surviving Title VII Claim of Discrimination Fails for Lack of a *Prima Facie* Case**

Plaintiff next objects to the recommendation that his surviving Title VII claim should be dismissed for failure to make a *prima facie* showing of discrimination on the basis of national origin. (Pl. Obj. Mem. at 1-2, 8-16.) Plaintiff asserts first, that the R&R incorrectly applied the legal standard, second, that the R&R improperly considered plaintiff's allegations of discrimination, and third, that the R&R improperly failed to consider plaintiff's Title VII claims concerning the fourth promotion request. (See id.) Each objection lacks merit.

First, plaintiff acknowledges that the R&R correctly identified the requirement that courts must evaluate discrimination claims based upon the "evidence as a whole" rather than in "piecemeal fashion." (See id. at 8-9 (citing R&R at 13-14 (citing Howley v. Town of Stradford, 217 F.3d 141, 151 (2d Cir. 2000)).) Plaintiff then goes on to assert, however, that the R&R failed to abide by this standard and instead "proceeded to analysis [sic] the record in piecemeal fashion." (See Pl. Obj. Mem. at 9.) Plaintiff is incorrect. The R&R did first "examine each particular" allegation of discrimination, but it then considered those allegations "in the aggregate" before reaching the conclusion that plaintiff failed to establish a *prima facie* case of discrimination. (See R&R at 13-19.)

Plaintiff's first objection therefore is denied.

Second, plaintiff objects to the R&R's examination, both individually and in the aggregate, of each allegation of discrimination raised by plaintiff under the first part of the burden-shifting test applicable to such claims.  As noted above, the R&R carefully identified and examined each of the allegations of discrimination raised by plaintiff.  (See R&R at 14-15 (identifying fourteen separate categories of evidence relied upon by plaintiff to establish a *prima facie* case of discrimination); see id. at 15-19 (examining each allegation of discrimination separately and together).)  Plaintiff's objections merely recite the same allegations and arguments that were previously presented to, considered by, and ultimately rejected by Judge Azrack in the R&R.  (Compare Pl. Obj. Mem. at 8-16 and Pl. Opp. at 20-29 and R&R at 14-19.)  The court finds that the R&R's thorough analysis of plaintiff's allegations in the first instance, however, was correct in that the plaintiff's proffered instances fail to raise an inference of national origin, age, or any other prohibited discrimination by defendant.  For the reasons stated in the R&R, the court therefore rejects plaintiff's objection regarding the R&R's consideration of his allegations individually and in the aggregate, and adopts the R&R's finding that plaintiff failed to make a *prima facie* showing of national origin discrimination.

Further, plaintiff objects that the R&R failed to

separately consider plaintiff's fourth promotion denial on
November 17, 2006. (See Pl. Obj. Mem. at 1-2; see also Def. Obj.
Mem. at 19 (citing Blank Decl. ¶ 56).)  Because the R&R found
that plaintiff's Title VII claims – encompassing all of
plaintiff's allegations – must be dismissed for failure to
establish a *prima facie* case, the R&R did not separately consider
either defendant's argument that the fourth promotion denial
should be dismissed due to plaintiff's undisputed failure to
exhaust this claim before the Equal Employment Opportunity
Commission ("EEOC") or plaintiff's counter-argument that EEOC
exhaustion was not required for this claim because it "reasonably
related" to the charges of discrimination. (See Def. Obj. Mem.
at 19-20 (citing Pl. Opp. at 33-34).)  Similarly here, having
reviewed *de novo* defendant's motion and the opposing submissions
and having found that the R&R correctly concluded that
plaintiff's Title VII claims must all be dismissed for failure to
establish a *prima facie* case, this court grants summary judgment
as to plaintiff's Title VII claims including, but not limited to,
his fourth promotion denial.

Accordingly, for the reasons stated above and set forth
in detail in the R&R, the court adopts the R&R's finding that
plaintiff fails to make out a *prima facie* case of national origin
discrimination, and therefore, adopts the R&R's recommendation
that the court grant defendant's motion for summary judgment on

plaintiff's surviving Title VII discrimination claim.

## C. Objections to the Finding that Plaintiff's Surviving Title VII Claim of Retaliation Fails for Lack of a *Prima Facie* Case

Finally, plaintiff objects to the R&R's recommendation that plaintiff's retaliation claim should be dismissed for failure to make out a *prima facie* claim of retaliation. (Pl. Obj. Mem. at 16-19.) Under the first prong of the familiar Title VII burden shifting test, in order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) that "he engaged in protected participation or opposition under Title VII," (2) "that the employer was aware of this activity," (3) "that the employer took adverse action against plaintiff," and (4) "that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." (R&R at 20 (quoting Kessler v. Westchester Co. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).) Here, there is no dispute as to the first three factors and that the fourth factor is dispositive of plaintiff's retaliation claim. (See R&R at 21.)

The R&R found that plaintiff could not meet the fourth element of a *prima facie* case because the proffered evidence of retaliatory animus in support of plaintiff's claim was unpersuasive, and further found that the lack of temporal proximity alone between the protected actions and the adverse

employment actions here was insufficient to show a "causal connection" between the protected activity and the adverse employment decisions. (Id. at 22-23.) Specifically, the R&R found that because "plaintiff cannot show any retaliatory animus on the part of the actual decision makers" on the SFCs, plaintiff resorted to "questioning the motives" of Laura Blank, a central administration employee who compiled the SFCs, and did so by relying on evidence which was "circumstantial at best" and which did "not rise to the level of direct evidence of retaliatory animus required to defeat a motion for summary judgment." (Id. at 22.) Further, the R&R noted that the fact that the SFC members were jointly chosen by the faculty union PSC and CUNY and the fact that Blank selected SFC members who had previously approved reappointment applications by plaintiff in the past contradicted plaintiff's assertion that Blank possessed a retaliatory animus. (Id.)

First, Plaintiff does not object to the R&R's finding that he failed to offer evidence showing any retaliatory animus by the actual SFC decision makers. (See Pl. Obj. Mem. at 16-19.) Thus, plaintiff is again left suggesting a retaliatory motive on the part of Blank. Upon this court's de novo review of the record, the court finds that the R&R correctly determined that the proffered evidence was insufficient to allow any reasonable jury to conclude that Blank possessed a retaliatory motive, and

plaintiff does not dispute the facts cited by the R&R which undermine an inference of retaliatory animus by Blank or identify any additional circumstantial or direct evidence in the record which might alter the R&R's correct conclusion. (Id. at 17.) Instead, plaintiff merely suggests that the fact that Blank selected SFC members, including Peter Deraney, who had previously supported plaintiff's applications, should not be considered "proof of lack of bias." (Id. at 17.) To begin, there is no indication that the R&R considered Deraney's selection as "proof of lack of bias," but even assuming it had, and even if the R&R accepted plaintiff's objection by completely disregarding the undisputed fact that Blank proposed SFC members who had in the past approved plaintiff's previous reappointment applications, this would not alter the R&R's finding that plaintiff failed to proffer direct or circumstantial evidence of retaliatory animus sufficient to defeat a motion for summary judgment. (R&R at 22.) Plaintiff's first objection is therefore denied.

Second, plaintiff objects to the R&R's finding that he failed to show a "causal connection" between the protected activity and the adverse employment decisions because of the lack of temporal proximity between the two actions. (See Pl. Obj. Mem. at 17-19.) For the reasons stated in the R&R and the defendant's response to plaintiff's objections, the court finds that the nine-year gap between plaintiff's last protected

activity in 1994 and the adverse employment decision on April 21,
2003 is too long a time period to give rise to an inference of
retaliation.  (See R&R at 22-23; see also Def. Obj. Mem. at 17-
18.)  Moreover, even assuming, as plaintiff asserts in his
objections, that his last protected activity occurred on
September 1, 2001, plaintiff's reappointment date at QCC, and
further that the adverse employment decision to deny plaintiff a
promotion occurred, as plaintiff urges, on October 21, 2002 when
Blank sent a proposed list of four professors for the SFC that
would consider plaintiff's request for a promotion (Pl. Obj. Mem.
at 18-19), this still leaves a temporal void of over one year –
too large a period to infer a retaliatory motive for that
earliest adverse decision, let alone the remaining adverse
decisions in the years that followed.  See Clark County Sch.
Dist. v. Breedon, 532 U.S. 268, 273 (2001) ("cases that accept
mere temporal proximity between an employer's knowledge of
protected activity and an adverse employment action as sufficient
evidence of causality to establish a prima facie case uniformly
hold that the temporal proximity must be very close") (internal
quotation omitted); see also Payne v. MTA N.Y. City Transit
Auth., 349 F. Supp. 2d 619, 629 n.3 (E.D.N.Y. 2004) (noting that
the Supreme Court has "cast doubt on whether the timing of an
adverse employment action could ever be sufficient, on its own,
to establish a prima facie case of causality" and granting

summary judgment to employer on finding that three month period between protected activity and the adverse employment action could not constitute temporal proximity) (<u>citing</u> <u>Breeden</u>, 532 U.S. at 273)).  Plaintiff's second objection is therefore denied.

Accordingly, for the reasons stated in the R&R, the court adopts the R&R's finding that plaintiff fails to make out a *prima facie* case of retaliation, and therefore adopts the R&R's recommendation that the court grant defendant's motion for summary judgment on plaintiff's surviving Title VII retaliation claim.

**<u>CONCLUSION</u>**

For the reasons set forth above, plaintiff's objections are denied and Judge Azrack's well-reasoned and thorough Report and Recommendation is adopted in all respects.  Defendant's motion for summary judgment is therefore granted in its entirety. The Clerk of the Court is respectfully requested to enter judgment in accordance with this order and to close the case.
**SO ORDERED.**

Dated:    March 29, 2011
          Brooklyn, New York

                              _____   /s/                    
                              **Kiyo A. Matsumoto**
                              United States District Judge